| 66  509 |
| 103  500 |

TIMOTHY FLANNERY, ADMINISTRATOR OF THE ESTATE OF ANNETTE BUDLONG, DECEASED, v. AARON BREWER.

*Trover and conversion—Demand—Delay for obtaining advice.*

1. An administrator who takes possession of personal property claimed by the decedent, with knowledge of an adverse claim by a third party to its ownership, has a reasonable time in which to take counsel and ascertain his legal rights in the premises, without subjecting himself to a suit for its conversion.

2. Taking possession of personal property by an administrator, pending an injunction suit commenced by the decedent to restrain a claimant from taking such possession, will not necessarily constitute a conversion of the property, but it must further appear that he either disposed of the property, or intended to deprive such claimant of the same.

Error to Kent.  (Montgomery, J.)  Argued June 9, 1887. Decided June 23, 1887.

Trover.  Defendant brings error.  Affirmed.  The facts are stated in the opinion.

*Godwin, Adsit & Rogers*, for appellant.

*Maher & Felker*, for plaintiff.

CAMPBELL, C. J.  Plaintiff sued defendant in trover for the conversion of goods of his decedent.  The defendant pleaded the general issue, with special notice that he was administrator of William Budlong, and that the property had been Budlong's, and that all his dealings were in that capacity, and to protect the estate.

The facts necessary to understand the controversy are these: Annette Budlong, who died in April, 1886, was wife of William Budlong, who died in June, 1886. In August, 1873, Budlong conveyed his farm to his wife, to revert to him in fee in case she died first. He also conveyed a lot of personal property by bill of sale which bound her, and her executors, administrators, and assigns, to allow Budlong the use of this property for life. Upon her death, nearly 13 years after, as plaintiff proposed to inventory her property, and remove what was not subject to the life-estate, Budlong filed a bill to enjoin the administrator from intermeddling, and to restrain another person claiming under Annette Budlong, and to get the contract reformed so as to give the personality back to him after her death.

An injunction was granted, and continued in force until September 6, 1886, when it was dissolved, and a demurrer sustained to the bill, but with leave to amend. Thereupon Flannery, the plaintiff, demanded possession of the personality, and on the thirteenth of September made a personal demand in writing. He had previously, in July, after Budlong's death, notified defendant, as Budlong's administrator, of his claim, and in the inventory of Budlong's estate it was noted that the property was claimed for Annette's estate.

When making the demand, on September 13, plaintiff testifies, in substance, that, upon defendant's stating that he wanted time to consult his counsel before making answer, plaintiff agreed to wait until the fifteenth. On that day they had an interview, and defendant would not say what he would do. A proposition was made to give him further time if he would agree that no attempt should be made to serve papers on plaintiff before the latter could sue; the object being to prevent an injunction without bonds under the statute. Defendant refused to do anything which would prevent his counsel from taking any steps they thought fit. He was told that if he would not do this, or give up the property, plaint-

iff would sue, and defendant said he would have to do so. This conversation was in the presence of plaintiff's counsel. After they left his office, defendant produced and handed plaintiff a written paper, previously prepared by his counsel, claiming that he could not answer without time to deliberate, and promising to answer in three or four days, and to keep the property safely in the meantime.

Suit was at once begun. Subsequently defendant undertook to file amendments to the bill and to get a receiver, who sold the property. No injunction was granted against this suit.

Upon the trial of the present cause the court below held that all the chancery proceedings before suit brought were properly in evidence, but refused to admit those had pending suit. The court also excluded testimony of various talks concerning a compromise holding and sale, which resulted in no agreement.

There is no question now made concerning Annette Budlong's title. The only defense practically insisted on is the right of defendant to do what he did without liability in trover for conversion.

The court, after referring to the existence of the chancery suit in July, when defendant took possession, and to the demand and dealings before suit brought, gave the following charges in regard to defendant's liability:

"Now, in the *first* place, as to the fact of the taking of possession of this property by the defendant in the first instance, and while the injunction was in force prohibiting the plaintiff from taking possession, I instruct you that this did not necessarily constitute a conversion of the property by the defendant. It must be further found that the defendant either disposed of the property, which I think is not claimed here, or that he intended to deprive the plaintiff of the property. This does not involve any question of fraudulent purpose on his part. It is 'enough if, having knowledge of the plaintiff's claim, he determines to exclude him from the possession of the property, and take the consequences.

He would have a reasonable time in which to ascertain the facts as to the plaintiff's claim, but in this case there is no such question, as the defendant understood, when he took possession of the property, and when he inventoried the goods, that the plaintiff claimed them. The defendant understood this.

"He would also have a reasonable time to take legal advice; but I instruct you if he had had such opportunity, and had obtained such advice, delay on a pretense of obtaining further advice with and for the purpose of beginning proceedings in equity, is not, as a matter of law, an excuse for not delivering the property.

"The general rule is that an unqualified refusal to deliver property by one not having the right of possession as against the true owner is in law not only persuasive, but conclusive, evidence of the conversion of property. That is the general rule. It is subject to certain exceptions, among which are those to which I have referred, viz.: The right, if a party is not informed as to the claims of the plaintiff, to have a reasonable opportunity to inform himself. That does not apply to this case, because there is no claim here that the refusal was put upon the ground that the defendant had not information as to the facts of the plaintiff's claim.

"Second. I instruct you, for the purpose of this case, that the party would have the right, even if he had knowledge of the facts, to a reasonable opportunity to consult counsel and take legal advice. But I decline to go further, and say to you, gentlemen, that the party would have a right to delay with the intent and purpose of instituting legal proceedings in some other form, or proceedings in equity.

"If, in this case, you find this delay was in good faith, for the purpose of ascertaining, by consulting his lawyer, what his legal rights were, then he would have a right to that delay. If, on the other hand, you find that the delay was not for the purpose of informing himself as to his legal rights, but with the intent of forestalling the plaintiff in his action, by instituting proceedings in a court of equity, it is not an excuse in the law for a refusal to deliver this property; and if the defendant then continued to deprive the owner of the property, and of his dominion over it, and detained and withheld it from the plaintiff, he would be liable in this action for the value of the goods so detained.

"In determining the question whether the defendant intended to deprive the plaintiff of his property, it is not important whether the use to which it was his purpose to put

it was one beneficial to him,—whether it was one that was calculated to benefit parties whom he represented.  In other words, it is immaterial that he was acting in a representative capacity, as to his liability upon that question, if he in fact intended to take the property and withhold it from the plaintiff, the true owner, and appropriate it to the use of others than the true owner.  And, in determining the question of whether it was his intention to withhold this property from the plaintiff, or whether, on the other hand, it was his purpose simply to withhold it a sufficient length of time to get legal counsel as to those rights, you are to take into account the fact that the defendant knew that the plaintiff claimed the property when he inventoried it; that the injunction preventing the plaintiff from taking possession was subsequently dissolved; and that the demand was made on the thirteenth, and an opportunity given to consult his attorney; as well as the question of whether an attorney was consulted before the final conference which preceded the commencement of the suit.

"Take the case, gentlemen.  If you find that the defendant intended to deny the plaintiff's right to the possession of this property, and to withhold it from him after having a reasonable opportunity to consult an attorney, and after having done so,—in other words, if you find that he intended to deprive the plaintiff of his property, to withhold it further from the plaintiff after the demand made by the plaintiff upon him,—he cannot excuse this by showing that the purpose of withholding it was simply for the purpose of obtaining legal advice as to his rights.  But you must be satisfied that this was the purpose.

' If you are satisfied, on the other hand, that the purpose was simply to delay action by the plaintiff until he himself could forestall his action by other proceedings in a different court, I instruct you, as a matter of law, that is not sufficient excuse for withholding this property from the plaintiff, and he renders himself liable for that course."

There were several requests to charge offered by defendant; but, if the charges given were correct, all of these were properly refused.

So far as the equity proceedings are concerned, they could not, without an injunction, have had any effect on the suit at law.  When the original injunction was dissolved and demurrer was sustained, there was no legal reason why plaint-

iff should not bring such legal action as was proper.  Having brought it, the action, if properly brought, could not be affected by subsequent transactions not pleaded, and could not be stayed by them, unless by the direct order of the court in equity, which was not given, and which could not be given without a bond or other security.  It is very difficult to see upon what ground equity could take jurisdiction at all upon any such facts as were set out in the bill.  But that question is not important now.  In the suit at law now before us there can be no question concerning plaintiff's title, and the case is narrowed down to one of the form of action.

The court charged strongly enough that the defendant, if he acted in good faith, and with no more than reasonable efforts to get time for consideration, was not liable for withholding the property.  There was testimony very strongly tending to disprove his legal good faith, and to show that he was trying to put plaintiff in a position where he could be put to the delay of a chancery suit and its consequences, with no security against loss or destruction of the property.  From the early part of July until the formal demand in September, defendant had known plaintiff's claim, and that he insisted on it.  The injunction was ordered dissolved a full week before this demand, and counsel knew all about it.  Some of the property was, to a certain extent, perishable, and most of it would suffer from use and delay.  In such a case it is not reasonable to leave a party's legal right open to these risks without indemnity.  The court below did not hold that a *bona fide* delay, even under these circumstances, was cause of action, but only that a delay for another purpose, distinctly reprobated by the intent of our statutes, was not justified.

No authority cited by counsel contravenes the rulings given, and we think them correct.  There was no very good reason why some diligence should not have been used as soon

as the controversy arose in July. But, be this as it may, the law cannot encourage delays not intended to aid parties in honest doubt to have those doubts solved. There was no time, from the beginning of this suit to the end of it, when an injunction could not have been applied for on a sufficient showing of equity, and upon filing security. A purpose to procure such delay without security, and not to determine the rights of defendant in good faith by fair investigation, deserves no favor, and the law has not given it any.

We think there is no error in the judgment, and it must be affirmed.

The other Justices concurred.