## REBECCA L. FELCHER v. ROBERT McMILLAN.

[See 97 Mich. 633; 100 Id. 341.]

*Landlord and tenant—Fixtures—Conversion.*

1. The law does not permit tenants, as a matter of right, to remove fixtures which are built into the leased building so as to become a part of it; citing *O'Brien v. Kusterer*, 27 Mich. 289.

2. There can be no conversion while the party complaining is in the actual possession of and using the property alleged to have been converted for the purpose and in the place in which it was intended to be placed and used.

3. Demand and refusal do not constitute conversion, but are only evidence thereof; citing *Daggett v. Davis*, 53 Mich. 35.

4. A party upon whom demand is made for the surrender of personal property lawfully in his possession is entitled to a reason-

able time in which to make reply to such demand; citing *Flannery v. Brewer*, 66 Mich. 509.

5. The purchaser of a leasehold and of certain fixtures which the original tenants had placed in the leased building, after surrendering to the landlord the possession of said fixtures, demanded their return. And it is held that a reply made within 24 hours, Sunday excepted, after the demand, was made within a reasonable time.

Error to Wayne. (Carpenter, J.) Argued November 1, 1894. Decided January 4, 1895.

Trover. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*T. E. Tarsney* and *W. W. Wicker*, for appellant.

*Gray & Gray*, for defendant.

GRANT, J. May 1, 1889, the defendant and his brother George executed a lease of the first floor and basement of that portion of the McMillan brick building known as "No. 7 Fort street," in the city of Detroit, to E. J. Roos & Co., "for the purpose of a restaurant and eating house, and, if desired, a first-class and at all times well-regulated bar," for the period of five years. All improvements and alterations which the lessees desired and the lessors assented to were to be made at the expense of the lessees. No assignment, releasing, or subletting was permitted without the written consent of the lessors indorsed on the lease. Roos & Co. made extensive alterations, and put in expensive fixtures. Roos & Co. subsequently transferred all their rights in the improvements and leasehold to Rothwell & Co., who transferred them to the plaintiff. No such assent as the lease provided for was obtained for these transfers. There was evidence of a verbal assent. The business, it appears, was not prosperous; the rent was largely in arrears; and in July, 1893, the lessors commenced

summary proceedings to recover against Roos & Co., the plaintiff, and her husband, and recovered judgment, which was appealed to the circuit and to this Court. 100 Mich. 341. The lessors commenced new proceedings in December, 1893, to recover possession, in which they again recovered judgment, under which a writ of restitution became issuable January 5, 1894. Mrs. Felcher then voluntarily surrendered possession to the lessors. Meanwhile Mrs. Felcher and her husband threatened to remove the fixtures, whereupon the lessors filed a bill in chancery, alleging that these fixtures were permanent, and constituted a part of the freehold, and prayed for a temporary and permanent injunction against their removal. A temporary injunction was granted, and was in full force when the Felchers surrendered possession. No answer was filed in that suit, and, after possession was surrendered, the suit was discontinued. On Friday, January 26, demand was made by the plaintiff for the possession of the fixtures. Defendant referred plaintiff's attorney, who made the demand, to his attorney, Mr. Gray, saying that whatever he said would be all right. Mr. Gray asked for a list of the articles demanded, which was furnished. The evidence on the part of the plaintiff was to the effect that Gray promised an answer by 2 o'clock that afternoon. Mr. Gray testified that he promised to do his best to give an answer by that time. The next forenoon plaintiff commenced this action of trover for the conversion of the property. On the same day (whether before or after the writ was served does not appear) Mr. Gray wrote a letter to plaintiff's attorney, giving reason for delay in sending an answer, and promising an answer on the following Monday. Monday Mr. Gray replied, stating that Mr. McMillan had no objection to the removal of the articles enumerated in the list except the sewers, the basement flooring, and all pipes and wires under the flooring, the iron posts supporting

the weight of the building, and the partition, door, and entrance leading out to Fort street; also that she might remove the partition, door, and entrance if she would deposit with one Gordon W. Lloyd, architect, $75 as a guaranty to close the entrance, and replace the foundation, etc., in the same condition that it was when the store was leased to Roos & Co.; also that she might remove the flooring, sewer pipes, and all matter excepted above, except the partition and entrance to Fort street, if she would deposit $350 with Mr. Lloyd as a guaranty to replace the sewers, floors, etc., in proper condition as when the same was leased to Roos & Co.; and also that she might remove the two refrigerators on the ground floor, which formed the front windows on either side of the door, if she would deposit with Mr. Lloyd $100 as a guaranty to replace the spaces with French plate glass, similar to the ones removed. The letter further stated that the offer was made without any concession of her right to remove the articles designated.

The situation of the premises before and after the lease and improvements were made is described by Mr. Lloyd, who was familiar with them, as follows:

. "There had been a cement floor, in good condition, with planks laid over. The new flooring was made as follows: The front two-thirds of the cellar was excavated about a foot, the old cement flooring being removed. A bed of concrete was first laid; then a bed of cement; and then into the cement were laid the so-called 'marble flooring,' which consisted of square blocks of tile made of baked cement. The concrete and cement made a homogeneous mass. The so-called 'tiling' might be removed, but would be so broken in the removal as to be of no value. Originally, there was no entrance to the cellar from the street. The improvement consisted in making such entrance, by building a series of stone steps leading about six feet out upon the walk. This stairway was protected from the street by brass railing. The sides and ceiling of the entrance,

103 Mich.—32.

the lower part of which was called the 'vestibule,' was constructed thus: Small tablets of tiling, two inches square, were laid in cement. The tablets could not be removed without removing part of the cement. The tablets, if unbroken and cleaned of cement, would have some value, but probably would be broken in removal. There were two partitions across the basement, besides the partition forming part of the vestibule. The latter was constructed of wood and art glass, fastened at the bottom into the concrete, and above to the main joists of the building. If this were removed, the basement would be exposed to the street. The other partitions consisted of studding, laid in the concrete, and fastened to the joists above. The studding was covered by so-called 'marble slabs,' which consisted of blocks of cement marbleized. The upper part was covered by art glass. All the partitions were built in the same way as ordinary partitions between rooms. The socalled 'marble slabs' were fastened in place by screws, and probably would be greatly broken in removal. They would be valueless unless unbroken and to be used in a place of like size. The sewers were all constructed below the concrete flooring, and it would cost more than they were worth to dig them up. The urinals, closets, and wash basins were constructed and connected in the usual manner. The three nickel-plated columns were iron columns, supporting the ground floor, and were put in place of wooden columns, previously there. The bar and counters were imbedded in cement, and firmly fastened in place. The refrigerators in the basement were built into the cement, and those on the ground floor were placed in the front windows. The lower plate glass was removed, and the refrigerators moved into place, the front glass of the refrigerator forming the window. If they were removed, the ground floor was open to the street. The ceiling consisted of plastering of the usual kind. The gas pipes were inclosed in the walls and ceiling, and chandeliers were attached in the usual way."

The evidence on the part of the plaintiff tended to show that these fixtures could be removed without injury to the building. The court directed a verdict for the defendant.

The defendant has three good defenses to the action:

1. Nearly all the articles were permanently attached to

the freehold, and became fixtures, under the rule in *O'Brien v. Kusterer*, 27 Mich. (2d ed.) 289, and authorities cited in the note. There is nothing in the lease nor in the subsequent transactions to show that the parties intended to treat these fixtures as personal property. The verbal or written assent by the lessors to the transfer of the lease indicates no such intention. The lessees chose to remove the pillars, the partitions, the sewers, the cement floor, and to replace them by others which they considered better suited to their business. If they chose to replace wooden pillars with iron ones, plate-glass fronts and partitions with refrigerators and mirrors solidly built in the partition walls, and to take up the sewers and floors, and replace them with others better and more expensive, the new ones did not thereby become trade fixtures, subject to removal by the tenant. The law does not permit tenants to remove fixtures which are built into the building and become a part of it. This case is nearly identical in its facts with those in *O'Brien v. Kusterer*, and further comment cannot make it plainer. This might not apply to the chandeliers and such articles as are temporarily attached, and can be removed by unscrewing, the removal of which would not mar or injure the walls or partitions; and by the letter of Mr. Gray full permission was given to remove these.

2. Defendant was not guilty of conversion. Mr. Felcher testified that in December, when he was attempting to remove the property, Mr. McMillan and his attorney notified him that Mr. McMillan claimed it as part of the realty, and that, should he persist in the attempt to remove it, McMillan would cause his arrest. The chancery suit was immediately instituted, and the court granted a preliminary injunction. The Felchers neither answered nor moved for a dissolution, and this suit was still pending when the demand was made and this action com-

menced. Mrs. Felcher continued in the absolute possession and control of the property, except that she could not tear it out and remove it. The institution of the chancery suit was not an act of conversion. There can be no conversion while the party is in the actual possession of and using the property for the purpose and in the place in which it was intended. *Lacey v. Beaudry,* 53 Cal. 693; *England v. Cowley,* L. R. 8 Exch. 126. The reason of this is more apparent from the fact that Mrs. Felcher had it in her power to put an end to both the chancery suit and the suit to recover possession, by paying the amount of rent due. She was entitled by the statute to five days after final judgment within which to make this payment, which time did not expire until January 5. It is certain, therefore, that there could be no conversion until after the demand was made. Demand and refusal, however, do not constitute conversion, but are only evidence thereof. *Daggett v. Davis,* 53 Mich. 35. At this time there was no refusal, and the chancery suit was still pending, in which the rights of the parties might have been determined. The defendant had done nothing to change the *status* of the property, and his acceptance of the keys of the building and possession did not affect the *status* of the suit, or constitute a conversion of the property.

3. We need not discuss the rights of the parties if the plaintiff had been ejected under a writ of restitution. She voluntarily surrendered possession, and the defendant was entitled to a reasonable time to make reply to such demand. *Flannery v. Brewer,* 66 Mich. 509. The reply was made within 24 hours, Sunday excepted, after the demand was made. This must be held a reasonable time, unless the promise to reply in the afternoon takes it out of the rule. We think it unreasonable to hold that the failure to reply at the precise time amounted to a refusal. The reason given for not replying within so short a time

was valid.   The attorney was entitled to reasonable time to see and consult his client, and determine what answer to give.   The answer secured to the plaintiff property to which she was not entitled, as well as to which she might be entitled.   Defendant was rightfully in possession of the property by the voluntary act of the plaintiff, and the conditions he required for its removal were reasonable and legal.   The injunction suit having been discontinued, the plaintiff, after demand, will still be entitled to remove the chandeliers and other articles of personal property, and, if defendant refuse, he will be liable in trover.

This disposal of the case renders it unnecessary to discuss the other questions raised.

The judgment is affirmed.

McGRATH, C. J., LONG and MONTGOMERY, JJ., concurred.   HOOKER, J., did not sit.