LOVETT *v.* BERMINGHAM-SEAMAN-PATRICK CO.

1. LANDLORD AND TENANT—FIXTURES—RIGHT TO REMOVE—GAS AT-TACHMENTS.

Gas fixtures and attachments have been uniformly held to be personalty as between vendor and vendee, as they can be removed without injuring the premises and are merely substitutes for lamps and chandeliers, which were always considered personalty. Additions to the real estate to the pecuniary advantage of the tenant are in most instances trade fixtures.

2. SAME—TRADE FIXTURES—LEASES.

Trade fixtures such as gas lights, lighting appliances and electric motors used by one tenant and which, as between it and the landlord, the prior tenant had a right to remove, were not transferred to the succeeding lessee by a lease which purported by its *habendum* clause to transfer appurtenances, although the contract provided that the premises be let in their then condition, and the first tenant removed them afterwards.

3. SAME—CONTRACTS—HABENDUM.

The language of the *habendum* cannot enlarge the demise.

4. SAME—RECOUPMENT—LEASE.

On a claim of recoupment by the lessee, because certain fixtures had been removed from the premises that were installed when the defendant executed the lease, plaintiff claiming defendant was informed they belonged to the preceding lessee, the court erred in not directing a verdict for the lessor upon the theory that the title was in the lessee as between it and the landlord and therefore no interest passed to the succeeding tenant by the contract of leasing.

Error to Wayne; Law, J., presiding. Submitted June 7, 1916. (Docket No. 7.) Decided July 21, 1916. Rehearing denied September 27, 1916.

Assumpsit by Sarah E. Lovett and another against the Bermingham-Seaman-Patrick Company, a corporation, for rent. Defendant presented a notice of set-off and recoupment. Judgment for defendant. Plaintiffs bring error. Reversed.

*James G. McHenry*, for appellants.

*Lloyd T. Chockley*, for appellee.

Plaintiffs in this action brought suit to recover two months' rent of a five-story building leased by defendant company from them. Defendant does not deny that it owes plaintiffs the amount of rent claimed, but it filed with its plea a notice of set-off and recoupment, based upon the claim that it had been damaged by

reason of the failure of plaintiffs to fulfill the covenants of the lease. The lease itself was entered into on the 9th day of November, 1912, and provided for a term of ten years, to begin on the 1st day of December, 1912. Important and controlling provisions of the lease follow. The granting clause:

"Land known as lots eighty-four (84), eighty-five (85), and eighty-six (86), Military Reserve, with the building thereon; said premises being situated on the southeast corner of Cass and Larned streets, in the city of Detroit, to be used and occupied as a wholesale paper house. Together with all and singular the benefits, liberties and privileges to the premises belonging."

The *habendum* clause:

"To have and to hold the said demised premises, with the appurtenances, unto the said party of the second part, its executors, administrators and assigns," etc.

The further agreement:

"Party of the second part expressly agrees to take the premises in their present condition, and make, at its own cost, all repairs to the interior of said building, and keep each and every part thereof in good repair, during the term of this lease, repairing and replacing any part or parts thereof, broken or removed, including glass of all kinds, gas, water, and steam pipes, watercloses, wash stands, sinks, sewers and water boilers, and connections."

It appears that the premises leased were, on the 9th day of November, 1912, when the lease in question was made, occupied by the Jacob F. Maier Company under a lease which had not, at that time, terminated, but which by agreement between the parties was to terminate on December 1, 1914, at which time defendant's lease became operative. It further appears that the Jacob F. Maier Company had become financially

embarrassed, and had executed a trust mortgage for the benefit of its creditors to one E. W. Hurd, as trustee, and that said Hurd as such trustee was in possession of the assets of the said J. F. Maier Company in the premises on November 9, 1912. The record discloses that after the lease was executed on the 9th of November, but before the 1st of December, through the courtesy of said Hurd, defendant was permitted to move a large portion of its stock in trade into the demised building, and that during the occupancy of the premises by the J. F. Maier Company that company had installed certain fixtures, including the following: Three gas arc lights for the shipping room, three gas arc lights for the office, two elevator motors and connections, and heating radiation upon the second, third, and fourth floors. On November 20, 1912, Hurd, as representative of the estate which he had in charge, notified the defendant company of his ownership of the gas arc lights, the elevator motors, and the steam pipes on the second, third, and fourth floors, suggesting that the defendant purchase such of them as it desired to retain. He said:

"We realize that some of these will be of value to you, and we do not expect to ask you to buy any parts that you cannot use."

As suggested in this communication from Hurd, defendant, on December 3, 1912, purchased the six gas arc lights for the sum of $50, and on January 31, 1913, purchased and paid for the two elevator motors, with their connections, for the sum of $350. Defendant did not elect to purchase the steam-heating radiation on the second, third, and fourth floors, whereupon Hurd took it down and sold it for the sum of $200. It is the claim of defendant that on November 23, 1912, it caused the following letter to be written to the plaintiff Sarah Lovett:

"Nov. 23, 1912.

"MRS. SARAH E. LOVETT,
    "City.
"*Dear Madam:*

"We are in receipt of a letter from Mr. E. W. Hurd, representative for the Jacob F. Maier Co.

"He claims that with the exception of the radiators in the office, shipping office, and one large radiator in the general shipping room, which were in the building when they took it, they own the balance of the heating apparatus and are now taking the pipes, etc., from the second and third floors. They also claim as their property all electric wires and fixtures, all gas lights and piping and also two electric elevator motors and connections.

"We are rather surprised that this should be taken up with us at this time as our lease states that we are to accept the building in its present condition at the time this lease was signed. We, therefore, think the above matters should be settled between Mr. Hurd and yourself. We would appreciate very much if you will take these matters up with Mr. Hurd as we do not wish to be caused any delay.

          "Yours very truly,
          "BERMINGHAM-SEAMAN-PATRICK CO.,
              "ROBT. A. PATRICK, President."

Mrs. Lovett upon the stand denied the receipt of this communication. In support of its claim of set-off and recoupment, defendant through its president, who conducted negotiations for the lease, claims that it never had notice of the fact that the Jacob F. Maier Company had or claimed title to the lighting fixtures, elevator motors, or the radiation. Plaintiffs placed upon the stand Henry G. Wormer, who negotiated the lease on their behalf, and sought to show by him that the defendant was notified before the lease was executed that the personal property in question belonged to the Jacob F. Maier Company. Under objection this testimony was excluded, apparently upon the ground that its admission would tend to vary the terms of the lease which was thereafter executed. A motion to di-

rect a verdict in behalf of the plaintiff was denied by the court, who charged the jury in part as follows:

"It is the conclusion of the court that the heating plant, the electric motors and the arc light system were appurtenances, under the terms of the written lease. 'Appurtenances' as the term is used in the lease means such things as are actually and properly necessary for the enjoyment of the five-story building leased. Appurtenances are necessarily of a corporeal nature and corporeal things, like a heating plant, electric motor, and arc lights, may be appurtenances. This word is used in this lease, and it must be considered in connection with it. A thing is appurtenant to something else when it is necessarily connected with the use and enjoyment of the whole, and it is the duty of the court to construe the written lease, and in construing it the court has a right and it is its duty to consider the situation of the party. The defendant leased from the plaintiffs the five-story building to be used and occupied as a wholesale paper house for the term of ten years. When leased, this building was equipped, as the defendant claims, with a heating plant, with electric elevator, motors, and with arc lights. The court holds that the defendant has a right to recoup or recover against the plaintiff in this case the loss of which it has suffered by reason of the removal of the plant or heating pipes, the electric motors and the arc lights, subject to the rules of law which the court will hereinafter give to you."

The jury returned a verdict in favor of the defendant upon its claim of set-off and recoupment as follows:

| | |
|---|---:|
| For loss of heat for 31 months, $30 per mo.... | $930 00 |
| For the motors and gas arcs.................. | 446 70 |
| Total ................................. | $1,376 70 |

After deducting the amount of plaintiff's claim for rent which it was conceded amounted to $1,145.96, defendant had judgment for the balance, $230.74.

BROOKE, J. (*after stating the facts*). The primary question for determination is whether the court was

in error in holding, as a matter of law, that the steam pipes for radiation on the second, third, and fourth floors, the arc lights, and the electric elevator motors, passed to the defendant under the terms of the lease. It is undisputed in this record that the plaintiffs never owned, or claimed to own, any of the property in question, unless a claim of ownership is to be inferred from the language of the conveyance (lease). In the early case of *Adams* v. *Lee*, 31 Mich. 440, this court through Justice COOLEY said:

"When the ownership of the land is in one person, and of the thing affixed to it is in another, and in its nature is capable of severance without injury to the former, the latter cannot, in contemplation of law, become a part of the former, but must necessarily remain distinct property, to be used and dealt with as personal estate only."

In that case the machinery was annexed to the building in a substantial manner, and was such as was used in the manufacture of wool. In *Scudder* v. *Anderson*, 54 Mich. 122 (19 N. W. 775), the property in question included several hundred feet of gas pipe which was affixed to the freehold. The court said:

"But movable pipes, or anything else, which are in fact moved from time to time, and used for different purposes and in different places, could hardly be so considered [*i. e.*, as fixtures annexed to the freehold]"

—and further:

"It is impossible to regard personal property capable of removal from the land, which does not belong to the landowner, as part of the realty" (citing *Adams* v. *Lee, supra,* and *Robertson* v. *Corsett,* 39 Mich. 777).

In *Felcher* v. *McMillan*, 103 Mich. 494 (61 N. W. 791), after holding that iron pillars, plate glass fronts, partitions with refrigerators, mirrors, etc., were not trade fixtures, but passed with the realty, the court said:

"This might not apply to the chandeliers and such articles as are temporarily attached and can be removed by unscrewing, the removal of which would not mar or injure the walls or partitions."

See, also, Bronson on Fixtures, § 53, where the rule is stated as follows:

"Gas chandeliers and gas burners screwed on the ends of gas pipes have been uniformly held to be personalty, even as between vendor and vendee, on the ground that they are removable without injury to the premises, and are merely substitutes for lamps and chandeliers, which were always considered personalty."

The general rule is stated in 19 Cyc. p. 1065:

"Where additions to the realty are to the pecuniary advantage of the tenant, they are probably 'trade fixtures.' "

In *Bowen* v. *Quigley*, 165 Mich. 337 (130 N. W. 690, 34 L. R. A. [N. S.] 218), this court defined the word "fixtures" as:

"Such chattels as merchants usually possess and annex to the premises occupied by them, to enable them the better to store, handle, and display their goods and wares. * * * They are generally removed without material injury to the premises" (citing cases).

As between plaintiffs and the Jacob F. Maier Company, there can be no doubt that the Jacob F. Maier Company had the right to remove the property in question upon the expiration of its lease, it being the unquestioned owner thereof, it follows, therefore, that, there being no unity of title as to the fixtures in question and the realty demised, the title to the fixtures did not pass to the defendant by the lease in question.

Much argument is indulged in on behalf of defendant as to the meaning of the word "appurtenances." It may be noted that the word appears only in the *habendum* clause, and not in the granting clause. It is elementary that the language of the *habendum* can-

not enlarge the demise. 2 Am. & Eng. Enc. Law (2d Ed.), p. 526, and cases there cited.

We conclude that the court was in error in holding as indicated in that part of the charge quoted, and that a verdict should have been directed for the plaintiffs for the amount claimed.

The judgment is reversed and new trial ordered.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred with BROOKE, J. KUHN, J., concurred in the result.