·JACOB ROSENBLUM, *Plaintiff and Respondent,*
vs.
TERRY CARPENTER, INCORPORATED, a Corporation, *Defendant and Appellant.*

(No. 2330; November 12th, 1946; 174 Pac. 2d 142)

For the defendant and appellant the cause was submitted on the brief of John C. Pickett of Cheyenne, Wyoming.

For the plaintiff and respondent the cause was submitted on the brief of Ray E. Lee of Cheyenne, Wyoming.

420

OPINION

RINER, Justice.

The District Court of Laramie County entered a judgment in favor of Jacob Rosenblum and against Terry Carpenter, Inc., in an injunction suit wherein the former was plaintiff and the corporation last named was defendant. For convenience these parties will usually be hereinafter mentioned simply as plaintiff and defendant or as "lessor" and "lessee", respectively. The losing party has brought the record in the cause here for review by direct appeal. The material facts which are required to be considered are substantially as follows:

The defendant, a Nebraska corporation, authorized to engage in business in this state, operated certain retail gasoline and oil filling stations in Wyoming. One of these was located at first on part of the property desscribed as Lot 1 and East 22 feet of Lot 2 in Block 393 in the City of Cheyenne, located at the intersection of Seventeenth Street and Thomes Avenue, owned by plaintiff and leased to the defendant. This original lease expired in 1939, and on August 1, of that year

the parties entered into a new written lease which included all of the aforesaid real estate.

This second lease term was "from the 1st day of August, 1939, for and during and until July 31, 1944". The instrument contained a covenant reading, "And the said lessee for itself, its successors and assigns further covenants with said lessor that said lessee has received said demised premises in good order and condition, and, at the expiration of the term hereof, it will yield up said premises to said lessor in as good order and condition as when the same were entered upon by said lessee, loss by fire or inevitable accident or ordinary wear excepted."

At the time the parties entered into the demise last mentioned there were three small frame houses located on the premises which buildings were rented to other persons. It seems to have been the intention of the lessor at the request of the lessee, some two months after the lease term had commenced, to remove all three of these buildings from the property and he did remove two of them and sold them, one for $500.00 and for something less than that for the other. However, the third structure (which was a three-room frame building about 15 x 41 feet in size, consisting of living room, bedroom and kitchen, all walls and ceilings plastered, with drop siding, shingle roof in "pretty fair shape" rented to tenants who moved out at lessor's request) also at the request of the lessee was eventually left on the premises and thereafter with the consent of the lessor for some time was used by it as a place to store oil barrels and from which to sell ice cream. During that time the third building aforesaid appears not to have been disturbed but was allowed to remain on the premises where it was originally located. During that time also the lessee had a small steel building thereto-

fore placed on the property by it and used in connection with its gasoline filling station business.

Later, being desirous of obtaining more commodious quarters, the third building aforesaid was by the lessee moved from its foundation on the premises to another location on the property near a double line of gasoline pumps which were being installed where the structure was used for a time before it was altered, as presently will be described.

February 2, 1942, the lessee entered into a written agreement with a local contractor for the latter "to remodel an existing building into a service station for Terry Carpenter". In doing this work the contractor tore off the roof and ceiling joists of this third building; its floor and floor joists were entirely removed as were also the inside partitions with the result that only the four walls were left standing. The inside of the building was "stripped" and as much as possible of the siding on the outside was left. The walls of the frame building aforesaid were then tied in by metal strips to the brick veneer wall which the lessee's contractor erected around and adjacent to the portion of that structure thus remaining so that the whole became an integral part of the building which is the subject of this lawsuit. The contract price for the work of remodeling the structure including extras, installing concrete "islands" for the gasoline pumps, walks, and other cement work, was over $4,000.00. One of the witnesses for the plaintiff, however, gave testimony from which it might be inferred that the new work and material for just the building itself could have been supplied for between $1,500.00 and $2,000.00.

There appears to have been no agreement either oral or written at any time between the lessor and lessee that the third building aforesaid should be disposed of

in any such manner as was in fact accomplished. When the lease expired the lessee sought to get the lessor to purchase the entire filling station equipmnt including the building as ultimately constructed. This the lessor declined to do and upon the lessee's manager advising the lessor that the building would be taken apart and removed from the premises this action was commenced and a temporary injunction order was procured, issued by the District Court Commissioner, restraining the lessee from doing that and from interfering with the possession and use of said building and equipment by said plaintiff. Thereafter this injunctional order was modified upon hearing had as it affected all the filling station equipment placed upon the property other than the building but was continued in force as to that. No appeal from this ruling was taken. Upon final hearing of the controversy relative to the building itself the injunctional order was made permanent upon a general finding against the defendant leasee. This action of the district court in this paricular now comes here for review as stated above.

The question for decision briefly stated is whether under the facts presented, the building in question is a trade fixture and removable as such by the lessee. The plaintiff presents the negative side of this question and the defendant the affirmative. The trial court, it would appear, took the view that the structure ultimately built was taken out of the rule ordinarily governing trade fixtures because of the incorporation into it by substitution as an integral part thereof of a substantial portion of the old frame building, i. e., the walls, which original structure was a simple fixture upon the premises when the lessee took possession of the property under its lease aforesaid.

For the purpose of this case and without attempting an exhaustive examination regarding what should be

viewed as a trade fixture we find Judge Story saying, in Van Ness vs. Pacard, 2 Pet. (U. S.) 137, 7 L. Ed. 374:

"The first exception raises the important question, what fixtures erected by a tenant during his term are removable by him? The general rule of the common law certainly is, that whatever is once annexed to the freehold, becomes part of it, and cannot afterwards be removed, except by him who is entitled to the inheritance. The rule, however, never was, at least, so far back as we can trace it in the books, inflexible, and without exceptions. It was construed most strictly between executor and heir, in favor of the latter; more liberally, between tenant for life or in tail and remainder-man or reversioner, in favor of the former; and with much greater latitude, between landlord and tenant, in favor of the tenant. But an exception of a much broader cast, and whose origin may be traced almost as high as the rule itself, is of fixtures erected for the purposes of trade. Upon principles of public policy, and to encourage trade and manufactures, fixtures which were erected to carry on such business were allowed to be removed by the tenant, during his term, and were deemed personalty, for many other purposes."

And 36 C. J. S. 975, states that, "An article may generally be regarded as a trade fixture if it is annexed for the purpose of aiding in the conduct by the tenant of a calling exercised on the leased premises for the purpose of pecuniary profit". The same text citing many cases supplies the general rule relative to trade fixtures in this language, "Articles annexed to the realty by a tenant for the purpose of carrying on a trade are ordinarily removable by him during his term * * * ", p. 973.

There are, however, certain restrictions on the right of the lessee to remove fixtures located by him on leased premises.

2 Tiffany Real Property, (3rd. Ed.) 608, § 621, says that:

"Furthermore, if the tenant has substituted a new fixture for one on the premises at the time of taking possession, and this latter has been injured or permanently removed, he cannot remove the substituted article, since the effect would be to leave the premises in worse condition than when he took the lease."

In accord with this last statement is Bronson's Law of Fixtures, 183, § 33, where this is said, "chattels that are attached for trade purposes, and so annexed to the realty as to be an integral part of the premises, or articles that have been substituted for other articles that were a part of the realty, do not thereby become trade fixtures, subject to removal, but they are a part of the freehold."

So the Supreme Court of Michigan, in Felcher vs. McMillan, 103 Mich. 494, 61 N. W. 791, examining the conduct of lessees in that case as it affected the leased property there involved, indicated the consequences which should ensue thus:

"The lessees chose to remove the pillars, the partitions, the sewers, the cement floor, and to replace them by others which they considered better suited to their business. If they chose to replace wooden pillars with iron ones, plate-glass fronts and partitions with refrigerators and mirrors solidly built in the partition walls, and to take up the sewers and floors, and replace them with others better and more expensive, the new ones do not thereby become trade fixtures, subject to removal by the tenant. The law does not permit tenants to remove fixtures which are built into the building and become a part of it."

Indicating a like position in substance, 1 Thompson On Real Property, 235, § 179, says that, "A tenant can only remove such improvements, the removal of which will not materially injure the demised premises or put them in a worse condition than they were when he took possession".

A similar view was indicated by the Supreme Court of Iowa, in Winnike vs. Heyman, 185 Iowa 114, 169

N. W. 631, where the court remarked, relative to the right to remove certain additions as trade fixtures which defendant as lessee had affixed to a building, that if the additions could not be removed without substantial injury to the original building they "are not to be regarded as trade fixtures but a part of the realty".

Where it appeared that a building with two storerooms was leased to one Mulock for theater purposes, these rooms having doors, windows and plate-glass which were removed by the tenant and replaced with others which were better fitted for his use of the building as a theater, and the tenant's successor in interest took out and carried off these substituted items, this court held him liable therefor and said, in Slane vs. Curtis, 41 Wyo. 402, 286 Pac. 372, that:

"It is generally held that a fixture substituted by a tenant for another fixture which was upon the premises at the time of the making of the lease cannot, ordinarily, be removed by him if the original fixture has been injured or permanently removed, since the effect of the removal of the substituted fixture would be to leave the premises in worse condition than when he took it. 26 C. J. 700. The tenant in the case at bar agreed in his lease, that he received the premises in good condition and that he would redeliver it in the same way, ordinary wear and tear excepted. He stripped the building and boarded up the openings where the doors and windows had been. The removal thereof left the property, accordingly, in a maimed condition and when that is true the right of removal is denied. 26 C. J. 700."

A situation in many respects like that at bar was presented in the case of Dougherty vs. Spencer, 23 Ill. App. 357. There the lessor Spencer filed a bill for an injunction to restrain the lessee Dougherty from removing a frame house off the leased premises and upon hearing had a decree was entered in favor of the lessor as prayed for in the bill. The lease was made in order to get certain land owned by Spencer cleared by Dough-

erty of timber and put in shape by him for cultivation. The record in the case, as reviewed by the appellate court, disclosed that:

"At the time appellant entered under his lease, an old two-story frame house (36 feet by 16, with kitchen attached, one story high, 16 by 18 feet) stood upon the premises, and was torn down, and the house in controversy (one and a half story high, 15 by 30 feet, with ell 20 by 24 feet) was erected by appellant upon another part of the leased premises, with material taken from the old house, and some new material furnished by appellant, the amount and kind of which is not shown; but it does appear that all of the material in the old building, that was good or suitable, was used in the house in controversy. So far there is no dispute as to material facts, and the only contradiction in the testimony of the parties is concerning conversations. Spencer testifies he told Dougherty at the time the lease was signed, he would reserve the old house and move it to another farm; but Dougherty said he would need a house on the land, and if Spencer would leave it he would put it up at the spring on the leased land; to which he, Spencer replied if he would do that he would leave the house on the land. He also testified, Dougherty called at his house in the spring, and said his brother John had spent more money on the house than he intended he should, and he thought I ought to pay for it; that nothing more was said about the house until in the summer or fall of 1884, when he presented a bill of $350 for the house. I refused to pay it. Appellant denied such conversations were had, but testified that in 1884 he asked Spencer to buy the house from him, and he replied he did not consider it of any value. This conversation Spencer testified never took place. Appellant also testified he never said anything to Spencer about tearing the old building down. Other than the testimony of the parties and the lease read in evidence, the record discloses nothing whereby it appears any right was given by appellee to the appellant to tear down the old house and use the material in it to construct the house in controversy."

In the written lease no right was given lessee to tear

down the old building and use its material to erect the house as thus built by the tenant.

It was contended by Dougherty that he was legally entitled to remove and appropriate as his own the house in question, "because it was a fixture erected by himself on the leased premises for the purpose of carrying on his business of clearing said land, and its removal would not damage the freehold".

Affirming the decree below the court very well said:

"While it is true the courts of this country have adopted a more liberal rule than that applied by the English courts concerning trade fixtures, and have, to a certain extent, done away with the distinction made by the English courts between structures erected by the tenant for the purpose of trade and manufacture, and those erected for the purpose of agriculture, we believe no well considered case can be found, decided by a court in this country, holding that a tenant, without the permission of or agreement on the part of his landlord, giving him the right so to do, can lawfully sever a building from the freehold, use the material of such building together with material by himself furnished in the erection of another house on the leased premises, and before his term expires remove the latter house off said premises, appropriate it to his own use as a trade fixture, and damage the freehold by denuding it of a structure, which, at the time the tenant entered, was a part of the realty."

With these authorities before us as applied to the record on file herein we do not see how we can properly interfere with the judgment of which complaint is now made. As already pointed out, there seems to have been no agreement between the parties hereto in the lease itself authorizing the lessee to act as it did relative to the old building admittedly a fixture on the leased premises. Neither was there any subsequent agreement, either written or oral, between the parties according the lessee such authority. On the contrary, the

lease itself required the lessee, at the expiration of the term, to return the premises to the lessor in "as good order and condition as when same were entered upon by said lessee" excepting only loss by fire, inevitable accident or ordinary wear.

It is perfectly clear that if defendant were allowed to prevail, this lease covenant it deliberately assented to would be broken. Certainly the new part of the structure in controversy, i. e., that part placed on the premises by the lessee after it had removed the original building from it foundations on the land, changed its location and dismembered it as detailed above, could not, it is evident, be removed without material injury even to the part of the old building incorporated in the completed structure. It is equally evident, too, that if the new portion was removed neither part would be an integral building . The defendant would have left on its hands a collection of crude materials and the plaintiff merely some frame walls changed and injured by both the erection and the removal processes.

The lessee could readily have protected itself against the consequences which the authorities reviewed above clearly attach to its conduct in this case. It could have insisted upon the insertion in the lease agreement the familiar provision that all fixtures installed by it on the premises might be removed by it upon the expiration of the lease term. It could have continued to have used the old building merely to store oil in and sell ice cream from as was at first done and for its filling station business erected a completely new building throughout. It could have entered into a distinct and subsequent agreement with the lessor that it might do exactly what it did with reference to the old building and still have the right to remove the structure ultimately completed. Neither of these alternatives did it see fit to adopt. Instead, it severed the original building from the land,

more or less wrecked that structure, mostly more, appropriated what was left to its own use and now claims as a trade fixture the walls of the original building which stood on the premises as a part of the realty when lessee took possession of them.

We have found no case which goes to the length we are asked to travel in order to reverse this judgment. The cases cited by the defendant are far from furnishing authority to do this. The only case to which it directs our attention which requires notice is that of RareMetals Min. & Mill. Co. vs. Western Colorado Power Co., 73 Colo. 30, 213 Pac. 124. There although some material from an old gold mill which it had dismantled had been used in the construction of a new mill for the treatment of vanadium ore by the lessee, the new mill was declared removable as a trade fixture, but it appeared in explanation of the ruling that the owner of the real property had expressly reserved in writing an option to purchase the new vanadium ore mill from the lessee upon the determination of the lease. Concerning this provision and particularly stressing it the appellate court said:

"This provision, in legal effect, recognizes that it was the intention of both parties that the plant should not become accessory to, or a part of, the realty, but should remain chattels, and be the property of the lessee, and might be removed during the tenancy if it could be done —as it could be—without material injury to the realty."

No such situation prevails in the case at bar and consequently the decision is of no aid here.

The judgment of the district court of Laramie County should be affirmed and an order to that effect will be entered.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.