ALGONAC MARINE HARDWARE COMPANY *v.* CLINE.

1. CORPORATIONS—SALE OF STOCK—BREACH OF CONTRACT—ACTION.
   Contract of sale of stock of plaintiff corporation to defendants, which reserved to the corporation the right to recover any funds or properties diverted to the personal use of the purchasers, fixed defendant purchasers' responsibilities, and the corporation may maintain an action against them for its breach notwithstanding the fact that both defendant stockholders approved all transactions of the corporation, no rights of creditors were impaired, no insolvency or minority stockholders had to be considered, and no interest of the State was involved.

2. SAME—STOCKHOLDERS—DIRECTORS.
   The majority of the stockholders of a corporation, and the majority of the board of directors in the field where it is the governing body, are supreme within the limits of honest administration and the boundaries of discretion, but their legal power cannot be used to effectuate a fraudulent purpose.

3. SAME—DIRECTORS—OFFICERS—FIDUCIARIES—DIVERSION OF ASSETS.
   The directors and executive officers of a corporation have a fiduciary relationship to the corporation which makes them personally liable to the corporation for diversion of corporate assets to themselves without a valid corporate purpose.

Appeal from St. Clair; Kane (Edward T.), J. Submitted Division 2 May 4, 1967, at Lansing. (Docket No. 2,825.) Decided March 25, 1968. Leave to appeal denied May 28, 1968. See 381 Mich 752.

REFERENCES FOR POINTS IN HEADNOTES

[1] 18 Am Jur 2d, Corporations § 490; 19 Am Jur 2d, Corporations §§ 1326–1330.
[2] 18 Am Jur 2d, Corporations §§ 460, 484.
[3] 19 Am Jur 2d, Corporations §§ 1272, 1274.

Complaint by Algonac Marine Hardware Co., a Michigan corporation, against Ralph R. Cline and George F. Zimmerman to recover corporate assets diverted to defendants' use. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Hartman, Beier, Howlett & McConnell,* for plaintiff.

*Rosenburg, Painter, Stanton & Bullen (Charles A. Nelson,* of counsel), for defendant.

GILMORE, J. At issue in this case is the question of whether the doctrine of unanimous stockholder ratification can be applied so as to immunize the purchaser of all of the stock of a corporation under an executory contract, subsequently forfeited, from liability for the wrongful diversion of corporate assets, where the contract specifically imposes such liability, permits the sellers to appoint a director, limits the purchaser's compensation, pledges the stock for the benefit of the sellers, provides for the conversion of corporate assets, and otherwise limits the rights of purchasers as stockholders.

Plaintiff, hereafter called Algonac, is a Michigan corporation engaged in the manufacture of marine hardware. Prior to January 9, 1962, the sole stockholders were four brothers—Charles Warner, Norman Warner, Vernon Warner and Wilbert Warner, hereafter called the Warners.

On January 9, 1962, the defendants Cline and Zimmerman entered into a contract with the Warners for the sale of all the stock of Algonac. An option agreement had been entered into on September 20, 1961, under which Cline and Zimmerman were to have a 90-day option for the purchase of 75% of the Warners' stock.

The agreement of January 9, 1962, provided for the purchase of all of the stock of Algonac from the Warners and for the purchase of sand-handling equipment from Warner Associates, a Michigan corporation, of which the Warners were also the sole stockholders, and provided in pertinent part as follows:

(1) The entire 25,000 shares of the stock were to have a restriction on their face indicating that the ownership of the shares was subject to the terms, covenants, and conditions of the agreement. It further provided that this restriction should remain on all certificates, and that all shares of stock should be subject to it, until the sellers were paid in full for both the stock and the sand-handling equipment.

(2) A nominee of the sellers was to be elected to the board of directors.

(3) No sale of stock or assets was to be made, nor was there to be any liquidation of the stock. Additionally, no mortgage, pledge or other encumbrance was to be placed upon the inventory, fixtures, buildings, land, or equipment of the corporation without the written consent of the sellers.

(4) No salaries or bonuses were to be paid to the officers of the corporation over the sum of $15,000 to each of the purchasers in any year in which the annual earnings of the corporation did not exceed the average annual earnings of the corporation between the date of its organization to and including the year 1961.

(5) If any of the corporate funds were diverted to the personal use of the purchasers, the amount of such diversion was due and payable immediately to the corporation.

To provide the down payment owing at the time of the closing in January, 1962, Cline and Zimmerman, as officers, directors and sole stockholders, approved

a loan of $20,000 from Algonac to themselves.  This money was then paid to the Warners.

The operation by Cline and Zimmerman did not fare well, and on March 25, 1963, the corporation was returned to the Warners and a release was given by Algonac and the Warners to Cline and Zimmerman.  This release provided, *inter alia,* that Algonac release Cline and Zimmerman

"from any and all manner of sums of money, deeds, accounts, actions, proceedings, claims and demands whatsoever, which either sellers or said company shall now have, or which they   *   *   *   but for these presents, could, would, or might, at any time or times hereafter have, upon or against the purchasers   *   *   *   for or by reason, or on account of the said stock purchase agreement, or any actions or failure to act on the part of the purchasers in the conduct of the business and affairs of said company, *with the exception of any diversion of corporate assets by purchasers to their personal use in excess of the amount of $19,000 not authorized by the said stock purchase agreement, dated the 9th day of January, 1962."*  (Emphasis supplied.)

The present action was started on August 5, 1963, and sought recovery for the following items:  (1) the $20,000 paid from the corporation to Cline and Zimmerman and thereafter paid by them to the selling stockholders on January 9, 1962; (2) $632.50 paid Sipi Metals by the corporation on October 24, 1962, in payment of interest on a personal debt owed by Cline; (3) a salary paid to Cline in the amount of $5,617, which allegedly had been expressly prohibited by the directors in the corporation minutes; (4) a bonus of $19,500 paid to Zimmerman at a time when the corporation owed money because of operational losses; (5) rental for sand-handling equipment paid by the corporation to Cline and Zimmerman in an

amount totaling $10,250 more than was provided under the written lease of the equipment to the corporation; and (6) miscellaneous items totaling $3,476.40.

In addition, plaintiff claimed that Wilbert Warner, under the agreement, had been appointed a member of the board of directors, but that no meetings of the directors had been held and that Wilbert Warner at no time participated as a director in any decision of the corporation.

The case was tried to a jury, and the jury returned a verdict for plaintiff in the amount of $24,608.90, plus interest to July 16, 1965, the date of the verdict, in the amount of $3,691.33.

Defendants, seeking reversal, claim that the corporation is barred from this cause of action because of the doctrine of unanimous stockholder ratification and because as purchasers, under the agreement of sale giving them full voting rights, they had an unimpaired right to vote the stock. They point out that both stockholders, Cline and Zimmerman, approved on all of the transactions of the corporation, that no rights of creditors were impaired, that there was no insolvency or minority stockholders to be considered, and that no interest of the State was involved. They, therefore, contend that their acts cannot be questioned in this action.

We do not agree. To do so would require the Court to ignore completely the agreement between the parties, which clearly fixes their responsibility.

Defendants seek to ignore the contract claiming that the corporation, plaintiff herein, was not a party to it. They therefore say it should not be considered on this appeal. This position is totally untenable. The contract sets forth the agreement of the parties and fixes their responsibilities. It is part of the record in this case, and should it be ignored

by this Court, the Court would be in the position of condoning defendants' actions, simply because they acquired majority voting rights to certain stock. This is not the law. In *Detroit & Canada Tunnel Corporation* v. *Martin* (1958), 353 Mich 219, 233, it was held that although the majority of the shareholders, under the authority lodged with them and the board of directors in a field where it is the governing body, are supreme within the limits of honest administration and the boundaries of discretion, "it is elementary law that legal power cannot be used to effectuate a fraudulent purpose."

Here, it is clear that there was an obvious misuse of the corporation and its assets by Cline and Zimmerman. There was a clear provision in the contract between Cline and Zimmerman and the Warners that reserved to the corporation the right to recover any funds or properties diverted to the personal use of the purchasers. To accept appellants' view of the liability of the purchasers to the corporation for the wrongful diversion of corporate assets would render meaningless the specific provisions of the contract, since their position as sole stockholders would automatically provide them with immunity from liability. If such were the law, the purchasers could divert all of the assets of the corporation to themselves, tender back the worthless stock to the sellers and abandon the transaction without further responsibility. Merely to state the proposition is to refute it.

This Court cannot ignore the stated terms and provisions of the agreement between the parties, which were written to provide the recited protection to the selling parties, and to enforce the stated liability of defendants to the corporation for diversion of assets,

The misuse of the corporation by Cline and Zimmerman amounted to a milking of it by these two parties. When the corporation did not succeed, they sought to get out of their obligation and return to the Warners the depleted corporation. This Court will not condone such activities, and the doctrine of unamimous stockholder ratification does not require it.

The directors and executive officers of a corporation have a fiduciary relationship to the corporation which makes them personally liable to the corporation for diversion of corporate assets to themselves without a valid corporate purpose. The rule is stated by Fletcher as follows:

"The fiduciary relation of the corporate officers to the corporation and its stockholders as a whole imposes upon them the obligation to serve the purpose of their trust with fidelity, and forbids the doing of any act by them, or by any one of them, by which the assets of the corporation are wrongfully diverted from corporate purposes. There is little or no controversy as to the liability in general of directors or other corporate officers for misappropriation, diversion or conversion of corporate assets. Such a liability exists and may be enforced by the corporation." 3 Fletcher's Cyclopedia Corporations (Perm ed), § 1102, p 717.

Defendants' action was also in violation of specific statutory provisions of the Michigan general corporation act. See CL 1948, § 450.56 (Stat Ann 1963 Rev § 21.56); CLS 1961, § 450.57 (Stat Ann 1963 Rev § 21.57); CL 1948, § 450.48 (Stat Ann 1963 Rev § 21.48).

The record is full of instances of diversion of corporate assets by the defendants to their own personal interest.

The corporation asserted a claim for diversion of $59,475.90 of assets, less $19,000. The jury, without

specifying what assets were diverted, determined that the net amount owing was $24,608.90, plus accrued interest of $3,691.33. The diversion which took place was entirely unauthorized and unlawful, since the corporation held no directors' meetings to authorize the acts resulting in such diversion. Cline and Zimmerman deprived the selling parties of the protected relationship they were entitled to.

The trial judge's instructions to the jury accurately paraphrased the statutes and judicial decisions on the subject. They included an accurate description of the legal nature of a corporation and the manner in which it may be lawfully operated, and properly informed the jury of the responsibility and liability of the appellants as sole owners of the corporation.

Seventeen cases purporting to support defendants' legal position are cited in their brief. None of these cases involve facts, circumstances, or issues similar to this case. It would serve no purpose to cite these cases and distinguish them. They are not on point.

Judgment affirmed. Appellee may have costs.

LESINSKI, C. J., and QUINN, J., concurred.