In re TALLA, INC., d/b/a McLane's Bump & Paint Company; d/b/a McLane's Auto Sales, Debtor.

David A. CUVRELL, Plaintiff,

v.

Robert A. LaLONE, Defendant.

Bankruptcy No. 80–00391.
Adv. No. 82–0167.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Nov. 21, 1983.

Dennis M. Haley, Flint, Mich., for plaintiff.

Roger W. Kittendorf, Mount Morris, Mich., for defendant.

MEMORANDUM OPINION AND ORDER

STANLEY B. BERNSTEIN, Bankruptcy Judge.

Introduction:

David A. Cuvrell, the Trustee of Talla, Inc. (Debtor), sued Robert A. LaLone for converting assets of the debtor. The debtor, Talla, Inc., was a closely-held Michigan corporation. At the time of its incorporation in April of 1977, the defendant, Robert LaLone, and Bobby E. Talsma were the only shareholders.

On May 9, 1977 the debtor borrowed $20,250 from Genesee Merchants Bank and Trust Company. To secure repayment of the loan, the debtor granted to the bank a mortgage on a parcel of real property and a security interest in equipment. The equipment was listed on a schedule attached to the security agreement and valued at $36,793.65.

The debtor filed a Chapter 11 petition on April 30, 1980. The bankruptcy schedules filed with the petition listed equipment having a value of $24,555.00. On January 12, 1982, the Chapter 11 case was converted to Chapter 7; schedules filed in the Ch. 7 case valued the equipment at $1,200.00.

The trustee filed his complaint for conversion against the defendant on May 25, 1982 to recover the cost of the missing items of equipment.

A Rule 205 examination of the debtor was held on September 14, 1982. Part of the transcript of that examination was admitted into evidence without objection. The defendant testified that many of the discrepancies between the three equipment lists and valuations resulted from the depreciation and "junking" of worn out equipment, some of which was merely abandoned when the corporation moved its place of business in 1980. The defendant further testified that in 1978 he had purchased two Quincy five-horsepower compressors and a Huth Bendograph from the debtor for $10,000.00. He claimed that there was a cancelled check and deposit slips evidencing this transaction. The defendant also testified that the purchaser of the compressors was Fenton Auto and Truck, a corporation of which the defendant is a stockholder, and that the Bendograph was purchased by the defendant in his individual capacity. The Bendograph was valued in the schedule to the security agreement at $8,940.00, and the combined price of the compressors at $1,750.00.

Later in the same Rule 205 examination, the defendant contradicted his earlier testimony and maintained that he did not purchase the compressors until some time in 1980 and it was at that time that the $10,000.00 payment was made.

The trial was held on June 23 and 29, 1983. The defendant testified in a convoluted manner that the Bendograph was purchased as part of a transaction in which he acquired Mr. Talsma's stock in the debtor and indemnified Mr. Talsma against any liability as guarantor of debtor's obligations to the bank.[1] Mr. LaLone then testified that he deeded a parcel of real estate he owned to the debtor in consideration for the equipment, and then the corporation transferred the land to Mr. Talsma to redeem his stock.[2]

No documents were introduced at the trial evidencing the transfer of the real prop-

---

1. The defendant and Mr. Talsma personally guaranteed the repayment of the loan they obtained from Genesee Merchants Bank and Trust Company for their corporation, Talla, Inc.

2. The defendant testified that the lot's value was $9,000 initially; he later stated that $14,000 was paid in consideration for the equipment and Mr. Talsma's equity shareholder's interest. At the time of the 205 examination,

erty to either the debtor or Mr. Talsma, nor was any document presented evidencing the defendant's alleged purchase for value of the disputed equipment. Despite Mr. La-Lone's insistence both at the 205 examination and at trial that he had cancelled checks and deposit slips from that purchase, he failed to produce them at trial. Having observed the defendant testify at trial and having considered his radically inconsistent statements both during the Rule 205 examination and the trial, the Court has determined that the defendant is wholly lacking in credibility.

## DISCUSSION

■ The trustee's complaint alleges that the "purchases" of equipment by Mr. La-Lone constituted conversion of assets of the bankruptcy estate. As to the compressors, the Court finds that they were transferred after the Chapter 11 petition was filed. The defendant admitted that no prior authorization to sell those items out of the ordinary course of business was obtained from the Court. The defendant is, therefore, liable for the stipulated value of the compressors in the amount of $1,750 under 11 U.S.C. §§ 549 and 551.

■ The trustee's characterization of the pre-petition "purchase" of the Bendograph as conversion is far more problematic. Conversion may be defined as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein," *Nelson & Witt v. Texas Co.*, 256 Mich. 65, 70, 239 N.W. 289 (1931). The defendant's action must be in the nature of a wrongful taking or detention, an illegal assumption of ownership, or an illegal use of the property. 22 Mich.L. & Prac., Trover & Conversion, § 1 at 4857 (1958). To prove conversion, one has to establish both elements of the cause of action: first, that the taking is without the rightful owner's consent, and second; that the alleged converter substantially interfered with the owner's use of the property. *See Felcher v. McMillan*, 103 Mich. 494, 61 N.W. 791 (1894).

The defendant testified that he purchased the Bendograph as one part of a transaction in which he purchased Mr. Talsma's interest in the debtor—thus, both Mr. LaLone and Mr. Talsma were parties to the transaction. Thus, those parties were also the sole shareholders in Talla, Inc. as well as the directors of the corporation. As such, the trustee cannot prove there was a nonconsenual taking since the transaction was necessarily approved by both the stockholders and the directors.

As to the second element of the tort, the trustee did not prove there was a substantial interference with the corporation's right to use the equipment. The only question asked of the defendant regarding the location of the equipment was at the trial, when he answered "yes" to the question: "[A]nd today you have possession and ownership—either yourself or an entity that you have interest in—in the Huth Bendograph, the welder and the compressors; is that correct?" Trial Trans. at 32 (6/23/83). Although an inference might be drawn from the defendant's testimony as a whole that it was likely that the equipment was removed by the defendant from the corporation's premises, such an inference is not an adequate basis for judgment. The fact remains that the defendant was never asked whether the property was physically removed from the debtor's premises or whether the debtor's ability to use the equipment was ever interrupted. The trustee's action for the intentional tort of conversion would appear then to fail for lack of proof.

■ This Court, after reviewing the testimony, has little doubt that the pre-petition transfer of property in this proceeding was not the result of a bona fide sale. Despite the defendant's allegations that he could document the consideration paid for the equipment he purchased, he did not provide that documentation, nor was his explanation for that failure at all convincing. Although the Court strongly suspects that the alleged purchase was a fraudulent conveyance under state law—see the Uni-

Mr. LaLone testified that this payment was in    the amount of $10,000.

form Fraudulent Conveyance Act as adopted in Michigan, M.C.L.A. § 566.11 et seq., the Court cannot enter judgment under that theory. Section 544(b) of the Bankruptcy Code, which provides that a trustee may avoid a transfer if fraudulent under state law, requires the trustee to assert by subrogation the right of an unsecured creditor who had an allowable claim at the time of the transfer. No such showing was made by the trustee. Indeed, the trustee in a post-trial memorandum argued that he did not rely upon 11 U.S.C. § 544(b), but instead upon 11 U.S.C. § 541(a), asserting that the trustee was asserting a pre-petition cause of action for conversion of property of the debtor's estate. See *In re Thompson,* 3 B.R. 312 (Bkrtcy.D.S.D.1980). Under the Bankruptcy Act of 1898, as amended, property of the estate under § 70(a)(6) included "rights of action [for] . . . the unlawful taking or detention or injury to property."

The trustee's prosecution of a claim against the defendant was based upon a sound insight that the defendant's actions as a shareholder of the debtor were actionable.

■ By considering this transfer as an act of shareholders and directors, consent to the transfer becomes a red herring. As the representative of creditors of the debtor's estate, the trustee can properly challenge the transfer as a violation of the directors' fiduciary duty to the creditors of the debtor. At bottom the defendant breached his fiduciary duty to the debtor's creditors by wasting corporate assets. The Court is satisfied that the defendant did not controvert the trustee's allegations that no consideration was paid to the corporation for the transfer of the Bendograph to the defendant.

The key concept is *diversion* of corporate assets without a valid corporate purpose by corporate directors and executive officers in breach of their fiduciary duties, a breach which makes them personally liable. The most persuasive authority is *Algonac Marine Hardware v. Cline,* 10 Mich.App. 158, 159 N.W.2d 150 (1962), an opinion written by then Circuit Court Judge Horace W. Gilmore (sitting by designation on the Mich-

igan Court of Appeals). Judge Gilmore relied upon the rule stated in the leading treatise on the law of corporations, Fletcher's *Cyclopedia on Corporations,* Permanent Edition, Vol. 3, § 1102, pg. 717:

> The fiduciary relation of the corporate officers to the corporation and its stockholders as a whole imposes upon them the obligation to serve the purpose of their trust with fidelity, and forbids the doing of any act by them, or by any one of them, by which the assets of the corporation are wrongfully diverted from the corporate purposes. There is little or no controversy as to the liability in general of directors or other corporate officers for misappropriation, diversion or conversion of corporate assets. Such a liability exists and may be enforced by the corporation.

In support of the application of this rule, Judge Gilmore relied, in part on § 48 of the then Michigan General Corporation Act, M.C.L.A. §§ 450.48. The restated section is now found as § 551(1)(a) in the Michigan Business Corporation Act, M.C.L.A. § 450.-1551(1)(a):

> (1) In addition to any other liability imposed by this act or other law upon directors of a corporation, directors who vote for, or concur in, any of the following corporate actions are jointly and severally liable to the corporation for the benefit of its creditors or shareholders, to the extent of any legally recoverable injury suffered by such persons as a result of the action but not to exceed the amount unlawfully paid or distributed:
>
> (a) Declaration of a dividend or other distribution of assets to shareholders contrary to this act or contrary to any restriction in the articles of incorporation or bylaws.

See also *In re Penning,* 22 B.R. 616 (Bkrtcy. E.D.Mich.1982).

Earlier reported decision in Michigan, not cited by Judge Gilmore, had long before followed the same analysis. See e.g., *Nahikian v. Mattingly,* 265 Mich. 128, 251 N.W. 421 (1933) for the proposition: "Defendant had keen business vision, but failed to recognize, in his dealings with the company,

the distinction between *meum* and *teum,* so essential in a fiduciary and managing capacity," at 134, 251 N.W. 421.

The Court finds that the defendant is personally liable for $8,940.00, the value of the Bendograph, arising from his breach of fiduciary duties as an officer and director of the debtor, which may be characterized as misappropriation or diversion of corporate assets. In addition, the defendant is also personally liable for $1,750, the value of the compressors which he caused the debtor to transfer to him after the bankruptcy petition was filed without proper authorization of the Court.

A judgment for the trustee in the amount of $10,690, plus interest at the judgment rate of 12% from the date of filing of the trustee's complaint until the judgment amount is fully collected, has been separately entered on this date.

SO ORDERED.